UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD JAMES ANSON, 12332-055,

        Plaintiff,                               **MEMORANDUM OF LAW
                                                         IN OPPOSITION TO
                                                         DEFENDANT'S MOTION
                                                          IN LIMINIE**

        v.                                                      Case No.:  1:07-cv-00035-EAW-HKS

UNITED STATES OF AMERICA,

        Defendant.
_____

### **PRELIMINARY STATEMENT**

The plaintiff, Donald J. Anson, by and through his attorneys, Faraci Lange, LLP, submits the following Memorandum of Law in opposition to Defendant's Motion in Limine reducing Plaintiff's personal injury damage demand to $75,000.  When plaintiff filed the original administrative claim in March of 2006, approximately eleven months after his injury, he claimed damages against defendant of $75,000.  At that time, he was unaware of the extent and permanency of his injury, as he was not able to obtain a diagnosis from anyone other than the health care providers employed by defendant and they had not provided him with a certain diagnosis or prognosis.  Ten months later in January of 2007 when his pain and reduction in the range of motion of his left shoulder had not improved, plaintiff increased the amount of his claim from $75,000 to $125,000.  Plaintiff's appreciation after nearly two years of continuous symptoms of the likely permanent nature of his injury constitutes newly discovered evidence and intervening facts not available at the time of his original administrative claim filed less than a

year after the injury occurred. Accordingly, defendant's motion seeking to reduce plaintiff's damages to the amount of his original claim of $75,000 should be denied.

## **PLAINTIFF'S MEDICAL TREATMENT**

On April 13, 2005, plaintiff fell injuring his left shoulder while entering a U.S. Marshals' transport vehicle handcuffed and shackled at his waist and ankles. *See* Merrick Aff., Exhibit F, pg. 6. At the time, plaintiff was in the custody of the U.S. Marshal Service, being transported from the Buffalo Federal Detention Facility ("BFDF") for a court appearance. *See* Merrick Aff., Exhibit F, pgs. 5-6. Plaintiff first sought medical treatment at the Division of Immigration Health Services Clinic ("DIHS Clinic") at the BFDF on May 4, 2005, for left shoulder pain and decreased mobility. *See* Merrick Aff., Exhibit G, pg. 1018. He was diagnosed with a left shoulder impingement, told to rest and an x-ray was ordered. *See* Merrick Aff., Exhibit G, pg. 1018.

On May 12, 2005, plaintiff returned to the DIHS Clinic and learned his left shoulder x-ray was normal. *See* Merrick Aff., Exhibit G, pg. 1020. Although Motrin was not helping with his pain, plaintiff was told to purchase pain reliever via commissary. *See* Merrick Aff., Exhibit G, pg. 1021. Plaintiff continued to have left shoulder pain and returned to the DIHS Clinic approximately 26 separate times thereafter, on May 18, 2005, June 1, 2005, June 13, 2005, June 24, 2005, July 5, 2005, July 8, 2005, July 15, 2005, July 18, 2005, July 27, 2005, August 2, 2005, August 4, 2005, August 10, 2005, November 2, 2005, November 14, 2005, November 23, 2005, December 8, 2005, December 14, 2005, December 27, 2005, January 19, 2006, January 20, 2006, January 25, 2006, January 30, 2006, February 13, 2006, February 16, 2006, February 20, 2006 and March 2, 2006. On these visits, according to the records, he was variously described as suffering from "shoulder strain" "impingement" "bursitis" and "possible rotator cuff tear" but at

no time do the records suggest that his condition is likely permanent and he would likely be suffering these symptoms indefinitely. Rather, the records, and plaintiff's own account, support him being told repeatedly that his symptoms would likely resolve. *See* Merrick Aff., Exhibit E, pg. 3; Exhibit G.

Plaintiff continued to suffer the same shoulder symptoms from March of 2006 through January of 2007 and reported them at the 21 visits to DIHS Clinic on March 16, 2006, March 20, 2006, March 21, 2006, March 27, 2006, May 4, 2006, July 24, 2006, July 27, 2006, July 31, 2006, August 4, 2006, August 23, 2006, September 30, 2006, October 2, 2006, October 11, 2006, October 19, 2006, October 30, 2006, November 21, 2006, November 27, 2006, November 30, 2006, December 3, 2006, December 19, 2006. *See* Merrick Aff., Exhibit G. Each of these visits ended with the same treatment provided, the same vague descriptions of what was wrong with his shoulder, and the same reassurance that his symptoms would improve.

## PLAINTIFF'S ADMINISTRATIVE CLAIMS

In March 2006 when plaintiff filed his first administrative claim seeking $75,000 in damages he had not received any certain diagnosis for his left shoulder injury and was unaware of his prognosis for recovery. He was continually reassured that it would improve by the medical providers who treated him by instructing him to do physical therapy exercises and take anti-inflammatory pain medications. *See* Merrick Aff., Exhibit C, E, pg. 3. The only testing done on his left shoulder was an x-ray, which was reported as negative.

Plaintiff filed another administrative claim in January 2007, nearly two years after his injury, seeking $125,000 in damages when he discovered his left shoulder pain and range of motion were not improving and were likely to be protracted or permanent.

## ARGUMENT

### Plaintiff's Failure to Improve After Nearly Two Years Constitutes Either Newly Discovered Evidence or Intervening Facts Sufficient to Permit An Increase in the Amount Claimed

Prior to commencing an action under the Federal Tort Claim Act ("FTCA"), a plaintiff is required to file an administrative claim with the appropriate federal agency. 28 U.S.C. §2675(a). If the claim is denied, either in writing or by failure to make a final disposition within six months, an FTCA complaint can then be filed in United States District Court. *Id.*

Generally, an action for damages brought under the FTCA cannot seek an amount over the amount claimed in the administrative claim originally presented to the federal agency. *Id.* There are two exceptions to this general rule: (1) when the increased amount is based on newly discovered evidence not reasonably discoverable at the time the original claim was presented; or (2) upon proof of intervening facts, related to the amount of the claim. 28 U.S.C § 2675(b). *See also*, *Malmberg v. United States*, 816 F.3d 185, 198 (2d Cir. 2016). A plaintiff need only show that one of the exceptions applies and a district court's finding will not be disturbed absent clear error. *Malmberg*, 816 F.3d at 198 (*citing O'Rourke v. eastern Air Lines, Inc.*, 730 F.2d 842 (2d Cir.1984)).

The "newly discovered evidence" exception applies when a plaintiff is unaware of the "medical extent of his injuries and expenses" at the time the original administrative claim is filed. *Barrett v. United States*, 622 F. Supp. 574, 594 (S.D.N.Y 1985), *aff'd,* 798 F.2d 565 (2d Cir. 1986). For example, plaintiff was permitted to amend the ad damnum clause where his life expectancy could not be ascertained due to an inability to assess subsequent intervening medical issues when the original administrative claim was filed. *G.C.W. v. United States*, 2015 U.S. Dist. LEXIS 173589, *1-2 (S.D.N.Y 2015). The Court noted, the original amount claimed was based

4

on known facts at the time and that "what was once unknowable is now subject to reasonably accurate estimation." *Id.*

Where a plaintiff filed an administrative claim and three weeks later underwent an MRI which revealed spinal disc injuries, it was held that the MRI results did not constitute "newly discovered evidence" permitting to change her ad damnum clause because she could have sought the MRI before filing her claim.  *Li v. Aponte*, 2008 U.S. Dist. LEXIS 74725, 43 (S.D.N.Y. 2008)[1].  However, one year later when the plaintiff underwent another MRI that revealed additional injuries not found on the original MRI, there was no dispute the second MRI findings constituted "newly discovered evidence" permitting the increase in damages claimed.  *Id.* at 43-45.

Due to the limited medical testing and treatment provided to the plaintiff, plaintiff was unaware and unable to determine the true extent of his injuries at the time he filed the first administrative claim on March 6, 2006.  To be fair, it is unclear from the records even whether his health care providers appreciated the true extent of his injuries as of the time he first filed his administrative claim.  Plaintiff's medical records indicate that his multiple medical providers described his injury using various terms including, "shoulder strain", "impingement" "bursitis" and "possible rotator cuff tear".  These records are entirely consistent with Mr. Anson's assertion that he was continuously reassured that his symptoms would resolve prior to filing his increased claim amount and even after that event.   The only test ever done on his left shoulder was an x-ray, which was negative for any boney abnormality.  The only treatments he was given were anti-inflammatory medication and range of motion exercises.

---

[1] In *Li* the plaintiff was not a prisoner and had the ability to seek whatever medical testing was medically available, a significantly different situation than presented here where plaintiff was incarcerated and was entirely dependent on defendant for his health care.

Similar to the plaintiff in *G.C.W.*, plaintiff based his first administrative claim on facts known at the time.  Plaintiff was told to rest, take pain medication, and perform physical therapy exercises until his symptoms improved.  It was only when his symptoms did not improve, over time, that plaintiff discovered the extent and permanent nature of his left shoulder injury causing him to file another administrative claim in January 2007 reflecting the prolonged and permanent nature of his left shoulder injury.  What was once unknowable, due to the Government's restrictive medical treatment, is now subject to reasonably accurate estimate of damages.  *See G.C. W.,* 2015 U.S. Dist. LEXIS 173589.

This situation also fits the second exception, for intervening facts.  The continuation and lack of improvement of his symptoms for the ten months after the initial claim was filed are intervening facts that occurred in that ten month period and led to his increasing the amount claimed.  See *O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 856 (2nd Cir. 1984) *citing, Husovsky v. United States,* 590 F.2d 944, 955 (D.C. Cir. 1978) (a changed medical diagnosis predicting an increased life span constituted an "intervening fact" when it was shown that the increased damage award sought was based on this change).

Finally, it must be noted that plaintiff filed his original claim *pro se* and while incarcerated.  He obviously was not knowledgeable about the extent and prognosis of his left shoulder injuries or about federal procedure at the time the claim was filed, nor did he have access to the health care providers of his choice.  Courts have repeatedly stated that documents filed by pro se litigants must be held to less stringent standards than formal pleadings drafted by lawyers. *Williams v. Carpenter,* 214 F. Supp. 3d 197 (W.D.N.Y. 2016) *citing Boykin v. KeyCorp,* 521 F.3d 202, 214 (2nd Cir. 2008).

## **CONCLUSION**

Therefore, given plaintiff's inability to determine the extent of his left shoulder injury at the time the original administrative claim was filed, defendant's motion reducing plaintiff's damages to $75,000 should be denied.

Dated: August 7, 2017
       Rochester, New York

                        FARACI LANGE, LLP

                        /s/Kristin A. Merrick
                        Kristin A. Merrick, Esq.
                        28 East Main Street
                        Rochester, New York 14614
                        Phone:  (585) 325-5150
                        Fax:  (585) 325-3285
                        Email:  kmerrick@faraci.com